IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:25-CT-03071-M-RJ

KEITH CURETON, Jr.,                         )
                                            )
                Plaintiff,                  )
                                            )
        v.                                  )            ORDER
                                            )
JOSHUA BARNES, et al.,                      )
                                            )
                Defendants.                 )

On April 3, 2025, Keith Cureton, Jr. ("plaintiff"), a state inmate proceeding without prepayment of fees, filed *pro se* a complaint under 42 U.S.C. § 1983. [D.E. 1, 2, 7].

First, although plaintiff's requests that the court return his complaint, see [D.E. 1-1], the court REMINDS him that a *pro se* litigant is responsible for maintaining his own legal records, and that he generally is not entitled to copies at the government's expense. See United States v. Gallo, 849 F.2d 607, 1988 WL 60934, at *1 (4th Cir. May 31, 1988) (per curiam) (unpublished table decision). Thus, if he seeks future copies of court filings, he instead may file a record system request through the Clerk's Office or use the Public Access to Court Electronic Records ("PACER") program. See 28 U.S.C.A. § 1914, Judicial Conference Schedule of Fees, at ¶4; http://www.nced.uscourts.gov/pdfs/CopyRequestInstructions.pdf (visited Mar. 26, 2026).

Next, the court turns to plaintiff's motion for a preliminary injunction. Mot. [D.E. 9] (generally seeking emergency transfer away from Maury C.I.). Plaintiff transferred from Maury C.I. to Marion C.I. circa July 15, 2025. See N.C. Dep't of Pub. Safety, Offender Pub. Info., https://webapps.doc.state.nc.us/opi/viewoffender.do?method=view&offenderID=1247387&searc

1

Case 5:25-ct-03071-M-RJ    Document 13    Filed 03/31/26    Page 1 of 8

hOffenderId=1247387&searchDOBRange=0&listurl=pagelistoffendersearchresults&listpage=1

(search by inmate number) (visited Mar. 31, 2026). This motion presumptively is moot, Rendelman v. Rouse, 569 F.3d 182, 186 (4th Cir. 2009); Taylor v. Rogers, 781 F.2d 1047, 1048 n.1 (4th Cir. 1986), and court does not discern that any exception applies, cf. City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983); Williams v. Ozmint, 716 F.3d 801, 809–10 (4th Cir. 2013).

Next, pursuant to 28 U.S.C. § 1915A, the court conducts its initial review of the complaint and allows the action to proceed in part.

Legal Standard:

When a prisoner seeks relief in a civil action from a governmental entity or officer, a court must dismiss the complaint if it is "frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(a), (b)(1). A frivolous case "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). Legally frivolous claims are "based on an indisputably meritless legal theory and include claims of infringement of a legal interest which clearly does not exist." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) (quotations omitted). Factually frivolous claims lack an "arguable basis" in fact. Neitzke, 490 U.S. at 325.

The standard used to evaluate the sufficiency of a pleading is flexible, and a *pro se* complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (quotation omitted). A *pro se* plaintiff's pleading, however, must contain "more than labels and conclusions," see Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008), and the court need not accept as true any legal conclusions

2

or unwarranted factual inferences, see Ashcroft v. Iqbal, 556 U.S. 662, 677–83 (2009); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 132 S. Ct. 1327 (2012).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). Further, a plaintiff also "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676; see Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691–92 (1978); Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985).

Plaintiff's Complaint:

Plaintiff's verified complaint alleges violations of his First, Fourth, and Eighth Amendment rights, the Prison Rape Elimination Act ("PREA"), the Violence Against Women Reauthorization Act ("VAWA"), 18 U.S.C. §§ 241, 242, and state tort laws. See Compl. [D.E. 1] at 10.

Plaintiff names as defendants: Maury C.I. Assistant Unit Manager Joshua Barnes; Secretary Todd E. Ishee of the North Carolina Department of Public Safety ("DPS"), now the Department of Adult Correction ("DAC"); DAC Deputy Secretary Brandeshawn Harris; DAC Director of Prisons Pete Buchholtz; Executive Director for the Inmate Grievance Resolution Board ("IGRB") Kimberly D. Grande; Associate Warden John R. Gray; Warden Stephen Waddell; Superintendent for Programs Antonio L. Ingram; Superintendent for Custody & Operations Bradley N. Fields; Captain Robert J. Burgess; Captain Christopher L. Martin; Captain Reggielette Coley; Lieutenant Lewis; Unit Manager Stephen D. Fonville; Unit Manager Domanick D. Smith; Sergeant Holmes; Sergeant Patrick Ghere; Security Risk Group ("SRG") Correctional Officer

Nathaniel Greene; Case Manager/Programmer Charles Crandell; Assistant Unit Manager Michael Arthur; and a Jane or John Doe PREA Administrator for the DAC. Id. at 4–9.

Plaintiff specifically alleges, *inter alia*, that: on or about September 8, 2023, a code was called for Blue Unit b-pod; staff responded and escorted offenders to restrictive housing, aka "the hole"; he was then housed in c-pod and had nothing to do with the situation in b-pod; after addressing issues in b-pod, officials, especially Barnes, came into c-pod and started to antagonize inmates, telling them to lock down; he then was in the upstairs shower; Ghere saw he was covered with soap and directed the control booth officer to turn the shower back on; Barnes came back to c-pod and "exchanged words" with plaintiff; Barnes came to the shower, had other officials come with him, and "got on his radio & told whoever was in control of the cameras to turn the cameras off [sic]"; Greene, Ghere, Holmes, Fonville, Barnes, Martin, Smith, and Crandell were in the shower, invading his privacy; Barnes pulled the white sheet off the shower curtain, knocking his clean clothes on the floor; Barnes and Martin were the main ones being most aggressive and threatening to use force; Ingram, Gray, Fields, and Burgess were in the pod, "looking at what was transpiring with [plaintiff] in the shower but all failed to intervene in & or stop the excessive force & sexual harassment & assault that transpired [sic]"; Barnes opened the shower curtain, exposing plaintiff's nakedness; Barnes then pulled out a taser, pointed it at him, and stated, "Bitch, I'm a tase your ass [sic]"; Martin told Barnes not to taser plaintiff because he was wet, but to spray him in the face with O.C. spray instead; plaintiff turned his back to the officers and "raised [his] hands in surrender [sic]"; Barnes asked, "what are you doing," and he responded, "I am surrendering, submitting to the cuffs, and want the cameras to see I got my hands raised with nothing in them or making no attempts to assault staff [sic]"; despite having his hands raised and making no threat to

4

anyone, Barnes then sprayed him in the back of the head, the right side of his face, and right eye; Barnes then started to put handcuffs on him while his hands were still raised; Barnes slammed him into the corner wall of the shower for no reason, out of camera view, and whispered into his ear, "you my bitch now [sic]"; Barnes "brushed his penis through his pants against [plaintiff's] exposed buttocks"; while putting on the handcuffs on plaintiff's right hand, Barnes "took his finger and stuck it in [plaintiff's] anus; plaintiff yelled, "help, I need help, he put his finger in my butt, PREA, PREA, I request to speak with a PREA officer [sic]"; "But all the officials & staff members was gross-derelict in my plea for help & deliberate indifference to it also by ignoring & or disregarding my plea for help & just laughed at me and did nothing [sic]"; Barnes then took the white sheet and wrapped plaintiff up in it while he was still naked; while leaving the shower, plaintiff tripped and fell on the white sheet but nobody helped him up; Barnes kicked plaintiff in the back and said, "get up, bitch"; once he got up, they "paraded" him to his assigned cell; once there, Barnes pushed him in the cell; Barnes, Ghere, and Holmes came in the cell while Fonville stood by the entrance; Barnes took the white sheet, again exposing plaintiff; Barnes "started to antagonize" plaintiff, taunting and telling him to put on his clothes despite having his hands cuffed behind his back; Fonville was the only officer who told Barnes to "cut it out & take of the handcuffs so [plaintiff] could put [his] clothes on"; and plaintiff then was escorted to "the hole."     See id. at 10–12.

Plaintiff further alleges: his attempts to file grievances as to this incident were hindered; Smith and Fields should not have responded to his grievances as they were involved or witnessed the event, but did so as a form of retaliation to spoliate evidence; Grande, Ishee, Bucholtz, Harris, Waddell, and the Jane or John Doe PREA Administrator were deliberately indifferent or liable as supervisors due to subordinate misconduct; Burgess and Coley appointed Smith and Fields to

5

respond and investigate the PREA grievance despite their involvement; and he informed everyone in a letter that no one from Maury C.I. should be involved in the investigation. See id. at 12.

Plaintiff alleges his injuries include, *inter alia*: being publicly demeaned, degraded, humiliated, and embarrassed; blurred vision; burning skin for two weeks; back pain; loss of janitor job; loss of wages; "anal pain & suffering [sic]"; foot pain; loss of reputation; insomnia; "chronic PTSD & depression [sic]"; and recurring nightmares of this incident. Id.

Plaintiff seeks, *inter alia*, compensatory and punitive damages, as well as declaratory and injunctive relief. See id. at 13.

### Discussion:

Plaintiff's Eighth Amendment claims against Barnes, Burgess, Crandell, Fonville, Fields, Ghere, Greene, Gray, Holmes, Ingram, Martin, and Smith are not clearly frivolous. See Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (per curiam); Hudson v. McMillian, 503 U.S. 1, 8 (1992); Whitley v. Albers, 475 U.S. 312, 321 (1986); Brooks v. Johnson, 924 F.3d at 104, 112 (4th Cir. 2019); Randall v. Prince George's Cty., Md., 302 F.3d 188, 204 (4th Cir. 2002); see also Woodford v. Ngo, 548 U.S. 81, 118 (2006) (Breyer, J., dissenting) (noting, "those inmates who are sexually assaulted by guards . . . have suffered grave deprivations of their Eighth Amendment rights.").

Plaintiff, however, has not alleged any cognizable claim under the Fourth Amendment. See Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); Twombly, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level").

Next, plaintiff may not rely on the VAWA, the PREA, or 18 U.S.C. §§ 241, 242 because these laws lack a private right of action. See, e.g., Moore v. Silver, No. 5:24-CV-686-BO-KS,

6

2025 WL 1212833, at *5 (E.D.N.C. Apr. 25, 2025), aff'd, No. 25-1500, 2025 WL 2694381 (4th Cir. Sept. 22, 2025); De'Lonta v. Clarke, 2012 WL 4458648, at *3 (W.D. Va. Sept. 11, 2012) (collecting cases), aff'd sub nom. De'Lonta v. Pruitt, 548 F. App'x 938 (4th Cir. 2013); Shahin v. Darling, 606 F. Supp. 2d 525, 535 (D. Del.), aff'd, 350 F. App'x 605 (3d Cir. 2009).

Next, plaintiff's bald grievance-related claims fail. See Booker v. S.C. Dep't of Corr., 855 F.3d 533, 541 (4th Cir. 2017) (explaining that, under Adams, 40 F.3d at 75, "inmates have no constitutional entitlement or due process interest in access to a grievance procedure"), cert. denied, 138 S. Ct. 755 (2018); see also Oliver v. Gray, No. CIV A 7:09-CV-00004, 2009 WL 366150, at *2 (W.D. Va. Feb. 12, 2009) ("Because a state grievance procedure does not confer any substantive right upon prison inmates, a prison official's failure to comply with the state's grievance procedure is not actionable under § 1983."), aff'd, 360 F. App'x 417 (4th Cir. 2010).

To the extent plaintiff raises access-to-courts claims, his bald allegations fail to identify with specificity an actual injury or "demonstrate that a nonfrivolous legal claim had been frustrated or impeded." Lewis v. Casey, 518 U.S. 343, 351–52 (1996); see Michau v. Charleston County, 434 F.3d 725, 728 (4th Cir. 2006); see also Oliver v. Myers, No. 7:08-CV-558, 2008 WL 5212409, at *4 (W.D. Va. Dec. 12, 2008) (noting that, "because state grievance procedures are separate and distinct from state and federal legal procedures, an institution's failure to comply with state grievance procedures does not compromise its inmates' right of access to the courts" (citation omitted)), appeal dismissed, 335 F. App'x 317 (4th Cir. 2009).

Next, plaintiff's bare assertions of retaliation amount to mere "labels and conclusions" insufficient to establish the requisite causal relationship between exercise of his First Amendment rights and defendants' purported adverse action. Cf. Martin v. Duffy, 858 F.3d 239, 249 (4th Cir.

2017) (quotation and alterations omitted), cert. denied, 138 S. Ct. 738 (2018); Booker, 855 F.3d at 540, 544; see Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 555; Adams, 40 F.3d at 74–75; see also Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996).

Next, the complaint fails to connect defendants Arthur or Lewis to plaintiff's allegations. See Iqbal, 556 U.S. at 676; Monell, 436 U.S. at 691–92; Wright, 766 F.2d at 850.

Finally, plaintiff's claims against Bucholtz, Grande, Harris, Ishee, Waddell, and the Jane or John Doe PREA Administrator fail because the doctrine of *respondeat superior* does not apply, Iqbal, 556 U.S. at 677, and he fails to plausibly allege viable supervisory liability claims under the governing standard, Twombly, 550 U.S. at 555; Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994).

## Conclusion:

In sum, the court: DIRECTS the clerk to provide plaintiff a one-time copy of the complaint; DENIES AS MOOT plaintiff's motion for a preliminary injunction [D.E. 9]; ALLOWS the action to PROCEED IN PART against defendants Barnes, Burgess, Crandell, Fonville, Fields, Ghere, Greene, Gray, Holmes, Ingram, Martin, and Smith; DISMISSES WITHOUT PREJUDICE as defendants Arthur, Buchholtz, Coley, Grande, Harris, Ishee, Lewis, Waddell, and the Jane or John Doe PREA Administrator; DIRECTS the clerk to continue management of the action under Standing Order 14-SO-02; and, if service under this standing order fails, further DIRECTS the United States Marshals Service to make service pursuant to 28 U.S.C. § 1915(d).

SO ORDERED this __31st__ day of March, 2026.

Richard E. Myers II
RICHARD E. MYERS II
Chief United States District Judge

8